UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**GEORGE FEDERICK BRITTON,**

        **Plaintiff,**

v.                                                                                              Case No: 6:20-cv-899-RBD-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

REPORT AND RECOMMENDATION

**THIS CAUSE** is before the undersigned on Claimant's appeal of an administrative decision denying his application for supplemental security income benefits. In a decision dated September 5, 2019, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, since April 19, 2018, the date the application was filed. R. 15-28. Claimant has exhausted his available administrative remedies and the case is properly before the Court. Having considered the parties' memoranda and being otherwise fully advised, the undersigned concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

    **I.**    **Issues on Appeal**

Claimant raises the following issues on appeal:

> Issue No. 1: Whether the ALJ's characterization of the psychologist's opinions as being "out of the realm of a medical statement" and [her] subsequent treatment of those opinions is proper.
>
> Issue No. 2: Whether the ALJ's rejection of the treating chiropractor's opinion was proper.

Issue No. 3: Was the ALJ's finding that jobs were available at step five of the sequential evaluation supported by substantial evidence?

Doc. 15 at 19, 27, 30.

## II. Standard of Review

As the Eleventh Circuit has stated:

In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III. The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc of the cervical spine with associated radiculopathy and status-post surgical intervention, and hypertension and obesity.[1] R. 17. At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled a listing. R. 22. In doing so, the ALJ further found that Claimant had a had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation with regard to concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. R. 21.

---

[1] The sequential evaluation process is described in the ALJ's decision. R. 16-17.

Prior to step four, the ALJ found that Claimant had the residual functional capacity (RFC) to perform light work with certain specifications. R. 22. Specifically, the ALJ found as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can stand/walk for four hours total. The claimant can occasionally perform all postural activities but he can never climb ladders, ropes or scaffolds. The claimant must avoid all overhead reaching; he can frequently push/pull, handle, finger and feel with the upper left extremity.

R. 22.

At step four, the ALJ found that Claimant had no past relevant work. R. 26. At step five, the ALJ found that considering Claimant's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Claimant could perform. R. 26. Therefore, Claimant was not disabled. R. 27.

## IV.    Discussion

Here, Claimant argues that the ALJ erred in discounting the opinions of two consultative psychologists, Dr. Austin and Dr. Ribot, and the opinion of a treating chiropractor, Dr. Sajgo; Claimant also argues that the ALJ's finding that jobs were available is not supported by substantial evidence. *See* Doc. 15 at 19-23; 27-29; 30-34. The Commissioner disagrees. *See id.* at 23-27; 29-30; 34-35.

### A.    Medical Opinions

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. § 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating,

examining, and non-examining medical sources.  20 C.F.R. § 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).  The consideration of medical source opinions is an integral part of steps four and five of the sequential evaluation process.

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Because Claimant filed his claim after March 27, 2017,[2] 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c are applicable in this case.  Under these provisions, an ALJ must apply the same factors in the consideration of the opinions from all medical sources and administrative medical findings, rather than affording specific evidentiary weight to any particular provider's opinions.  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  The ALJ must consider: 1) supportability; 2) consistency; 3) relationship with the claimant;[3] 4) specialization; and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior

---

[2] Claimant filed his claim on April 19, 2018.  Doc. 15 at 1.

[3] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the ALJ considered the remaining three factors (relationship with claimant, specialization, and "other factors"). 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) ("The new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'") (quoting *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam) and citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)(same)).

### i.      Opinions of Dr. Austin and Dr. Ribot

Claimant argues that the ALJ erred in discounting Dr. Austin's and Dr. Ribot's opinions. *See* Doc. 15 at 19-23. The undersigned disagrees.

The ALJ found Dr. Austin's opinion "partially persuasive" as follows:

> Dr. Austin opined the claimant's social functioning was mildly impaired due to difficulties with interpersonal interactions related to his mental health condition and his functional ability was mildly impaired due to reported symptoms of major depressive disorder. I find this opinion partially persuasive. Dr. Austin noted the claimant was cooperative and compliant with fair eye contact, no problems with rapport were noted. Dr. Austin's basing the claimant's functional ability being mildly impaired due to self-reported symptoms of major depressive disorder takes this part of the opinion out of the realm of being a medical statement. Dr. Austin noted the claimant's mood was neutral with appropriate affect.

R. 20. The undersigned finds that the weight the ALJ assigned to Dr. Austin's opinion is supported by substantial evidence. The ALJ first explained that Dr. Austin opined that Claimant's social functioning was mildly impaired due to difficulties with interpersonal interactions. *See id.* But, the ALJ noted, Dr. Austin found that Claimant was cooperative, compliant with fair eye contact,

and had no problems with rapport. *Id.* Thus, it appears that the ALJ concluded that Dr. Austin's opinion that Claimant had difficulty with interpersonal interactions are not supported by Dr. Austin's own findings concerning Claimant's cooperation, compliance, and rapport. Second, the ALJ explained that Dr. Austin opined that Claimant's functional ability was mildly impaired due to self-reported symptoms of major depressive disorder. *See id.* The ALJ concluded that Dr. Austin's reliance on Claimant's self-reported symptoms takes Dr. Austin's opinion—at least in part—"out of the realm of being a medical statement." *Id.* The ALJ then noted that Dr. Austin observed Claimant's mood to be neutral with appropriate affect. *Id.* Thus, it appears that the ALJ somewhat discounted Dr. Austin's opinion concerning Claimant's functional ability on two grounds: Claimant's symptoms were self-reported and, upon examination, Dr. Austin observed Claimant's mood to be neutral with appropriate affect. It is not the Court's role to pass on the quality of the ALJ's writing or analysis, other than to determine whether the ALJ's explanation is legally sufficient and supported by substantial evidence (i.e. more than a scintilla). Here, it was. The ALJ found Dr. Austin's opinion to be partially persuasive and provided reasons based in record evidence why Dr. Austin's opinion was not fully supported by and consistent with that evidence.

>    The ALJ found Dr. Ribot's opinion "partially persuasive" as follows:
>
> Dr. Ribot opined that the claimant's overall social functioning seemed limited based on reported social isolation and his functional ability appeared to be limited based on reported, documented and observed untreated depressive symptoms. I find this opinion is partially persuasive. Dr. Ribot did not provide any specific limitations. Additionally, Dr. Ribot noted basing the claimant's limited social functioning on the claimant's self-reported isolation, which takes this portion of the opinion out of the realm of being a medical statement.

R. 20. The undersigned finds that the weight the ALJ assigned to Dr. Ribot's opinion is supported by substantial evidence. First, although Dr. Ribot found that "[C]lamaint's overall social functioning *seemed* limited" and "his functional ability *appeared* to be limited," the ALJ noted

that Dr. Ribot did not actually provide in his opinion any specific limitations. R. 20 (emphasis added). Second, the ALJ stated that Dr. Ribot's finding concerning Claimant's limited social functioning on the claimant's self-reported isolation, which takes this portion of the opinion out of the realm of being a medical statement." *Id*. Thus, it appears that the ALJ somewhat discounted Dr. Ribot's opinion concerning Claimant's functional ability on two grounds: Dr. Ribot did not actually opine to any limitations and, to the extent Claimant "seemed" to have limited social functioning, those unspecified limitations were based on self-reported symptoms. Again, it is not the Court's role to pass on the quality of the ALJ's writing or analysis, other to determine whether the ALJ's explanation is legally sufficient and supported by substantial evidence (i.e., more than a scintilla). Here, it was. The ALJ found Dr. Ribot's opinion to be partially persuasive and provided reasons based in record evidence (or a lack thereof) why Dr. Ribot's opinion was not fully supported by and consistent with that evidence.

Further, the ALJ considered Dr. Austin's and Dr. Ribot's opinions not only when the ALJ specifically weighed those opinions, but also in addressing the "paragraph B" criteria, where the ALJ mentioned both doctors by name and cited—several times—to their respective opinions. *See* R. 21. And relatedly, even if the ALJ did err in weighing Dr. Austin's or Dr. Ribot's opinions, the undersigned finds that any such error is harmless. Indeed, as the Commissioner points out, the ALJ's "paragraph B" findings—of mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting or maintaining pace; and no limitation in adapting or managing oneself—are at least facially consistent with both doctors' opinions, and Claimant makes no argument to the contrary. *See* Doc. 15 at 25.

Accordingly, the undersigned recommends that the ALJ's consideration of Dr. Austin's and Dr. Ribot's opinions comported with the requirements of law, including the new Social Security Regulations. Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function. *Winschel*, 631 F.3d at 1178.

### B. Dr. Sajgo's Opinion

Claimant argues that the ALJ erred in discounting the opinion of a treating chiropractor, Dr. Sajgo. The undersigned disagrees.

The ALJ found Dr. Sajgo's opinion "not persuasive" as follows:

> On May 18, 2018, Dr. Sajgo completed a Physical Assessment form and opined the claimant's symptoms often interfered with attention and concentration required to perform simple work related tasks. He would need to recline in excess of typical breaks and lunch break. The claimant could walk one city block; sit for one to two hours and stand/walk for one hour in an eight-hour workday. He would take unscheduled breaks every hour for 20 minutes. He could frequently lift 10 pounds and would be absent one to two times per month. (Exhibits 4F; 5F/30-31; 6F/24-25; 18F). I find this opinion is not persuasive. Chiropractic forms left the work restrictions blank on sessions from January 26, 2018 through July 5, 2018 (Exhibits 5F/13-29; 6F/5-23; 19F/13-30, 47) with Cesar N. Abiera, Jr., M.D. reporting the claimant had no gross neurological deficits (Exhibit 19F/31, 33, 37).

R. 25. Thus, the ALJ provided two reasons for his finding concerning Dr. Sajgo's opinion: 1) no chiropractor provided work restrictions on the chiropractic forms, i.e., Dr. Sajgo left the work restrictions portion of the form blank; and 2) Dr. Abiera (Claimant's treating neurologist) reported that Claimant had no gross neurological deficits. Both of those reasons are supported by substantial evidence. Indeed, the ALJ cited to several chiropractic forms, none of which included any work restrictions despite the fact that each form contained a specific location (left blank) where Dr. Sajgo could indicate work restrictions. *See* R. 25. And the ALJ cited to several of Dr. Abiera's reports, all of which indicated Claimant had no gross neurological deficits. *Id*. In short, the chiropractic forms did not support Dr. Sajgo's opinion, and that opinion was not consistent with Dr. Abiera's medical records. Accordingly, the undersigned recommends that the ALJ's

consideration of Dr. Sajgo's opinion comported with the requirements of law, including the new Social Security Regulations. Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function. *Winschel*, 631 F.3d at 1178.

### C. Available Jobs

Claimant argues that the ALJ's step-five finding that jobs were available to Claimant is not supported by substantial evidence. Doc. 15 at 30. Specifically, Claimant argues that the ALJ's hypothetical question to the Vocational Expert (VE) did not include a limitation related to the occasional postural limitations set forth in the RFC, and thus that the VE testified to jobs available to Claimant based upon an incomplete account of Claimant's limitations. *See id.* The undersigned recommends that the Court reject this argument.

At step five of the sequential evaluation process, once the claimant has proven that he can no longer perform past relevant work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1228-30 (11th Cir. 1999) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). An ALJ may rely on the testimony of a VE in determining whether the claimant can perform other jobs in the national economy. *Id.* at 1229. The ALJ is required to pose hypothetical questions that are accurate and that include all of the claimant's functional limitations. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ, however, is not required to include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the VE's testimony but fails to include all the claimant's functional limitations in the hypothetical question, the final

decision is not supported by substantial evidence. *See Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

>   Here, the ALJ posed this hypothetical to the VE:

> [I]f the person was able to perform light exertion but limited to walking or standing for a total of four hours. And obviously performing all of the postural activities. And not able to reach overhead. . . Frequently able to push, pull, handle, finger, and feel with the upper left extremity. Would there be jobs?

R. 48-49.  In response, the VE testified that such a claimant could work as a Small Parts Assembler (49,100 jobs); an Electronics Worker (7,400 jobs); and an Inspector Hand Packager (78,800 jobs). R. 49.  In the RFC, the ALJ included the same limitations as the hypothetical question, except that the ALJ stated "[C]laimant can occasionally perform all postural activities but he can never climb ladders, ropes or scaffolds."  R. 22.

Claimant thus argues that, since the hypothetical question to the VE did not include a limitation to occasional postural limitations as set forth in the RFC, the ALJ's finding that jobs were available to Claimant is not supported by substantial evidence. *See* Doc. 15 at 30-34.  The Commissioner acknowledges the discrepancy between the RFC and the hypothetical question but argues that it is "no more than harmless error because none of the jobs identified by the VE requires more than occasional postural limitations." *Id.* at 34 (citing U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991), § 706.684-022, 1991 WL 679050 (assembler, small products I) (postural activities "not present"); § 726.687-010, 1991 WL 679633 (electronics worker) (postural activities "not present"); § 559.687-074, 1991 WL 683797 (inspector and hand packager) (occasional stooping; remaining postural activities "not present")).  Upon review, the undersigned agrees with the Commissioner.  None of the jobs the VE testified Claimant could perform in significant numbers—Small Parts Assembler, Electronics Worker, Inspector Hand Packager— require climbing ladders, ropes, or scaffolds (as prohibited by the RFC) or require more than

occasional postural activities. Thus, remand to ask the VE a hypothetical question consistent with the RFC would not change the result of the jobs available to Claimant. The error is harmless here. Accordingly, the undersigned recommends the Court reject Claimant's final assignment of error.

V.      **Conclusion**

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**Recommended** in Orlando, Florida on May 10, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy